OPINION
This timely appeal arises from the decision of the Jefferson County Court of Common Pleas denying Appellant's motion for modification of spousal support. For the reasons that follow, this Court affirms the judgment in part, reverses the judgment of the trial court in part and remands this matter for further proceedings.
Pearl Mae Shepherd ("Appellee") and George M. Shepherd ("Appellant") were granted a divorce in the Court of Common Pleas of Jefferson County, Ohio, on December 4th, 1987. At the time of their divorce, the parties had two minor children, Brandon and Alayna. In the final Decree of Divorce, Appellant was ordered to pay the sum of $678.00 per month for child support and the sum of $275.00 per month as spousal support. The Decree further provided that when the minor children reached the age of majority, child support payments would cease and spousal support payments would be increased to $350.00 per month. In addition, Appellant was responsible for paying the parochial school tuition and medical bills for both children as well as assuming responsibility for two outstanding loans at the Miners Mechanics Bank.
In June, 1989, Brandon Shepherd turned eighteen and graduated from high school. Approximately two years later, Appellant contacted the Jefferson County Child Support Enforcement Agency and requested a reduction in his child support obligation as a result of Brandon's emancipation. Pursuant to his request. Judith Krenzel of the Bureau of Support sought to obtain current wage and income information from Appellee and Appellant. Appellant never responded to this request or to a subsequent request made one month later. (Transcript, pp. 12-13). The record indicates that Appellant was informed that no modification could take place without Appellant's cooperation and as his wages were garnished to satisfy his support obligations, Appellant was well aware that no modification had occurred. (Transcript, pp. 16-18)
In June, 1995, Alayna Shepherd turned eighteen and graduated from high school. On December 23, 1996, Appellee filed a motion to find Appellant in contempt for failure to satisfy his financial obligations imposed by the trial court pursuant to the Decree of Divorce. Specifically, Appellee alleged that Appellant had failed to pay Alayna Shepherd's school tuition in the amount of $6,500.00, had failed to repay the loans at the Miners and Mechanics Bank in the amount of $2,799.11. and had failed to pay certain medical expenses for the children while they were minors. Appellee claimed that Appellant owed a total of $12,901.27.
In response, Appellant filed a motion seeking to have Appellee's motion dismissed and for the court to modify the previous order of spousal support. Appellant argued that he had overpaid child support for his son in the amount of $30,171.00 and for his daughter in the amount of $5,763.00, for a total overpayment in child support of $35,934.00. As a result, Appellant sought to have the trial court enter an order relieving him of any further obligation to provide spousal support in lieu of receiving reimbursement for the overpaid child support.
Both motions were heard before the court on February 10, 1997. After hearing testimony in the matter, the court determined that Appellant had overpaid child support in the amount of $23,517.69. (Journal Entry, March 3, 1997). The court further determined that Appellant had failed to make certain payments as alleged by Appellee and mandated by the Divorce Decree in the amount of $12,901.27. After subtracting this amount from the amount of overpaid child support, the court determined that Appellant was left with a net overpayment of child support in the amount of $10,616.42. As to the net overpayment, the court determined:
 "That the Defendant [Appellant] was provided an opportunity to have his child support modified by submitting information which was requested by the Child Support Enforcement Agency to said Agency but that he failed to do so. The Court further finds that the Defendant [Appellant] knew he was overpaid in the amount of support but took no affirmative action to see that the previous court orders were modified or terminated. In fact, Defendant [Appellant] took no action to modify or terminate spousal support until the filing of the Plaintiff's [Appellee's] Motion for contempt [sic] of Court."
* * *
 "Because the Court finds that the Defendant [Appellant] willfully failed to take advantage of the opportunity to modify child support and/or modify or terminate spousal support, the Court finds that the Defendant [Appellant] is estopped by virtues [sic] of laches and waiver from now claiming reimbursement for any overpayments.
* * *
 "However, although Plaintiff [Appellee] testified that she had been gainfully employed but that she terminated said employment so as to be a full-time caretaker for her two grandchildren, that most of her expenses are being paid by her son whose children she is caring for, the Court finds there is still a need for spousal support and it is therefore ordered that spousal support shall continue."
(Journal Entry, March 3, 1997).
It is from this decision that the present appeal arises. In his first assignment of error, Appellant argues:
 "It was an abuse of discretion by the Court to not apply the overpayment of the child support to the order of spousal support."
Appellant contends that since the trial court specifically found that Appellant had overpaid his child support obligations in a net amount of $10,616.42, it was an abuse of discretion to not apply this overpayment to his spousal support obligation. In support of this argument, Appellant draws this Court's attention to Appellee's concession that she failed to notify the Child Support Enforcement Agency that the parties' children had reached the age of majority in violation of R.C. § 3113.21(G) (4) (a). This statutory section provides in relevant part:
 "The parent who is the residential parent and legal custodian of a child for whom a support order is issued . . . immediately shall notify * * * the child support enforcement agency of any reason for which the support order should terminate including, but not limited to * * * [a] change of legal or physical custody of the child. A willful failure to notify the child support enforcement agency * * * is contempt of court. Upon receipt of a notice pursuant to this division, the agency immediately shall conduct an investigation to determine if any reason exists for which the support order should terminate * * *."
The statutory language appears to have placed a mandatory duty on Appellee to notify the Child Support Agency when the children turned eighteen or graduated high school. Appellant contends that Appellee's failure to comply with this notice requirement entitled him to a refund of his child support overpayment which should have been applied towards Appellant's spousal support obligation.
We disagree with Appellant's contentions. As a preliminary matter, this Court notes that the trial court has broad discretion in deciding domestic relations issues. Cherry v.Cherry (1981), 66 Ohio St.2d 348, 355. A reviewing court cannot substitute its judgment for that of the trial court unless, considering the totality of the circumstances, the trial court abused its discretion. Holcomb v. Holcomb (1989), 44 Ohio St.3d 128,131. An abuse of discretion connotes action by the trial court which may only be characterized as unreasonable, arbitrary or unconscionable and not merely an error of law or judgment.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219; Kunkle v.Kunkle (1990), 51 Ohio St.3d 64, 67.
In the case at bar, the trial court ruled that Appellant was estopped from seeking reimbursement of the child support overpayments by, "virtues [sic] of laches and waiver" notwithstanding Appellee's failure to notify the Child Support Enforcement Agency. (Journal Entry, March 3, 1997). Therefore, this Court must determine whether the trial court abused its discretion in finding that Appellant was barred from recovering the balance of his child support overpayment. State ex rel.Donovan v. Zajac (December 31, 1997), Geauga App. No. 96-G-2006, unreported, at 6-7.
Laches has been defined as follows:
 "Neglect to assert a right or claim which taken in connection with lapse of time and other circumstances causes prejudice to the adverse party, and therefore operates as a bar in a court of equity."
Badger v. City of Steubenville (June 12, 1992), Jefferson App. No. 91 J 11, unreported, citing Black's Law Dictionary, p. 787. There is no mechanical formula or set of rigidly applied factors used to decide if the doctrine of laches applies. Instead, the issue of laches, "is predominately one of fact, to be resolved in each case according to its special circumstances." 66 Ohio Jurisprudence 3d (1986) 422. Limitations and Laches, Section 222. The Supreme Court of Ohio has stated:
 "`Laches is an omission to assert a right for an unreasonable and unexplained length of time, under circumstances prejudicial to the adverse party. It signifies delay independent of limitations in statutes. It is lodged principally in equity jurisprudence.'"
Connin v. Bailey (1984), 15 Ohio St.3d 34, 35, quoting Smith v.Smith (1957), 107 Ohio App. 440, 443-444.
At the hearing, the trial judge heard testimony that Brandon Shepherd turned eighteen in June, 1989. Appellant, however, waited until June, 1991, to seek a reduction in his child support obligation. Even when Appellant did finally request to have his support obligation reduced, he failed to cooperate or to help facilitate the very reduction he originally sought. (Transcript, pp. 68-69). There is nothing in the record to indicate that he ever sought a reduction or termination of child support based on his daughter, Alayna Shepherd, reaching the age of majority.
Appellee's testimony provides some explanation for Appellant's failure to fill out the required wage and income information forms necessary to modify child support obligations. Appellee testified, and the Divorce Decree confirms, that Appellant was responsible for paying both children's parochial school tuition, medical expenses and paying off two bank loans. (Transcript, pp. 34-41). She further testified that Appellant knew his son had turned eighteen and graduated from high school and had even attended Brandon's graduation ceremony. (Transcript, p. 35). She testified that while Appellant knew he was paying too much child support, they had agreed that Appellee would pay some of Appellant's court ordered obligations out of the extra child support she was receiving if he would not seek a modification. (Transcript, pp. 34, 35, 37, 40).
Appellant never specifically disputed this. While he did testify that the parties had no explicit agreement, he appears to have contradicted himself with the remainder of his testimony. The following dialogue is illustrative:
 "Q: Okay. Now, did you pay the tuition for Brandon and Alayna at Catholic Central?
"A: I paid for Brandon but I was unable to pay for Alana.
 "Q: Okay. So, did you object to that money being used for Catholic Central tuition?
 "A: * * * She would tell me about having to pay tuition and I told her I don't have the money to give it to you but your [sic] being compensated for it."
(Transcript, pp. 58, 60).
Appellant later admitted that Appellee had paid all of Alayna's tuition, paid the loan at the Miners and Mechanics Bank, paid for Alayna's orthodontist and optometrist bills, and for various prescriptions for the children. (Transcript, pp. 69-70).
"Q: So, as far as you know she's paid all of that.
"A: Well, I give her child support and alimony."
(Transcript, p. 70).
Based on the testimony adduced at the hearing, there was substantial and credible evidence to support a finding that Appellee and Appellant had an understanding, either expressed or implied, that Appellee would pay Appellant's obligations out of the excess child support and in exchange, Appellant would not seek to modify the amount of that child support obligation. Appellant's failure to meaningfully seek any type of modification for approximately seven years after Brandon's emancipation serves only to corroborate the existence of this agreement. To require Appellee to reimburse Appellant the balance remaining from his overpayment of child support under these circumstances would cause just the type of prejudice that the doctrines of laches and estoppel were designed to avoid.
Accordingly, this Court finds that the lower court did not abuse its discretion in concluding that Appellant was estopped from seeking reimbursement of his child support overpayments by the equitable doctrine of laches. Appellant's first assignment of error is overruled.
For his second assignment of error, Appellant argues that:
 "It was an abuse of discretion for the Court to not terminate the prior order of spousal support."
Appellant next maintains that Appellee had demonstrated her ability to support herself by obtaining and keeping for over three years a well paying full-time job which she voluntarily terminated in order to care for their son's children. (Transcript, pp. 27-29, 44). Appellant contends that in voluntarily terminating her employment, a substantial change in circumstances had occurred and that income should be imputed to her. Appellant argues that this failure to impute income to Appellee constitutes an abuse of discretion which requires this Court to reverse the decision of the trial court.
Appellant correctly notes that when reviewing the decision of a trial court regarding modification of a spousal support award, the reviewing court must consider whether the trial court abused its discretion in overruling the motion to modify; it must consider whether that decision was unreasonable, arbitrary or unconscionable. Blakemore, supra at 219.
The applicable statute relevant to this issue is R.C. §3105.18 which provides in relevant part:
 "(E) If a continuing order for periodic payments of money as alimony is entered in a divorce or dissolution of marriage action that is determined on or after May 2, 1986, and before January 1, 1991 * * * the court that enters the decree of divorce or dissolution of marriage does not have jurisdiction to modify the amount or terms of the alimony or spousal support unless the court determines that the circumstances of either party have changed and unless one of the following applies:
 "(1) In the case of a divorce, the decree or a separation agreement of the parties to the divorce that is incorporated into the decree contains a provision specifically authorizing the court to modify the amount or terms of alimony or spousal support. * * *"
R.C. § 3105.18 (F) states:
 "(F) For purposes of divisions (D) and (E) of this section, a change in the circumstances of a party includes, but is not limited to, any increase or involuntary decrease in the party's wages, salary, bonuses, living expenses or medical expenses. * * *"
Where modification of a spousal support award is requested, the threshold question is whether the trial court retained jurisdiction to modify the provisions of its order and whether the circumstances of a party have changed. Wolding v. Wolding
(1994), 82 Ohio App.3d 235, 239. Division (E), above, denies the court jurisdiction to modify an award of spousal support absent a change of circumstances; division (F) provides that a change of circumstances includes any increase or involuntary decrease in a party's wages, salary or living expenses. However, the change must be one that is substantial and one not reasonably contemplated at the time of the prior order. Leighner v.Leighrier (1986), 33 Ohio App.3d 214, 215.
If the moving party establishes that a change in circumstances has occurred, the trial court must determine the amount of spousal support that is appropriate and reasonable. Fallang v.Fallang (1996), 109 Ohio App.3d 543, 549. To do so, the trial court must consider the factors set forth under R.C. §3105.18 (C) (1). Adams v. Adams (August 6, 1997), Jefferson App. No. 96 JE 12, unreported. While there is no express requirement that the trial court's order granting or denying a motion to modify spousal support reexamine in toto the factors listed in R.C. § 3105.18 (C) (1), what is required of the trial court is a clear indication of what factor or factors were considered in support of its ultimate decision. Flauto v. Flauto (April 29, 1999), Mahoning App. No. 97 CA 65, unreported. The trial court should set forth the basis for its decision with sufficient detail to allow proper appellate review. Graham v. Graham (1994),98 Ohio App.3d 396, 399-400.
In this case, these procedures were not followed. Preliminarily, we note that the trial court had jurisdiction to decide this issue. The original divorce decree had expressly and specifically reserved the jurisdiction of the court to revisit the issue of spousal support in the event of a change in circumstances. In its journal entry, the trial court noted that: (1) Appellee had been gainfully employed, (2) Appellee terminated her full time employment to care for her grandchildren, (3) Appellee was living in her son's home, and (4) most of Appellee's expenses were paid for by her son. However, the trial judge then determined that, "there is still a need for spousal support." There is nothing in the record before us to indicate what statutory factors, if any, were considered by the trial court when it reached this determination.
While the trial court's findings will be upheld absent an abuse of discretion, the judgment entry does not contain sufficient detail to allow this Court to review the trial court's decision in a meaningful fashion. The record reveals that there was enough evidence before the trial court to support a finding that the Appellee had voluntarily terminated her employment thus resulting in a significant change of circumstances. Once Appellant met this burden, the trial court was required to consider what amount of spousal support would be appropriate and reasonable under the circumstances with an eye toward the factors contained in R.C. § 3105.18 (C) (1). Flauto, supra. It may very well be that the $275.00 monthly spousal support, as ordered continued by the trial court, is appropriate and reasonable. However, in failing to address Appellant's contention that income should be imputed or assessed to Appellee due to her voluntarily terminating employment and in failing to address any of the statutory factors, this Court is unable to determine if the trial court's decision was the product of an abuse of discretion.
Accordingly, Appellant's second assignment of error is sustained and this matter is remanded to the trial court for further proceedings consistent with the opinion rendered herein.
COX, P.J., dissents; see dissenting opinion.
DONOFRIO, J. concurs.
APPROVED:
 _______________________ CHERYL L. WAITE, JUDGE